UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RUTH KAY A.,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　　Defendant. | NO: 1:18-CV-3240-TOR<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross motions for summary judgment (ECF Nos. 13, 17). The Court has reviewed the administrative record and the parties' completed briefing, and is fully informed. For the reasons discussed below, the Court grants Defendant's motion and denies Plaintiff's motion.

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

//

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citation omitted). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation

omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

**FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe, or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 404.1545(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work

"exists in significant numbers in the national economy." 20 C.F.R. § 416.1560(c); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff filed for disability benefits under Title II, alleging an onset date of December 7, 2009. ECF No. 13 at 2. In 2013, Plaintiff's claim was denied by an Administrative Law Judge (ALJ). *Id*. The Appeals Council upheld the denial. *Id*. Plaintiff appealed to the federal district court and secured a remand for further proceedings. *Id*. Upon remand, an ALJ issued a new opinion in October 2018.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 7, 2009, the alleged onset date, through her date last insured of December 31, 2014. Tr. 781. At step two, the ALJ found that Plaintiff had the following severe impairments: "cervical and lumbar degenerative disc disease; bilateral carpal tunnel syndrome, status post release; mild left cubital tunnel syndrome; and mild right ulnar neuropathy". Tr. 781. At step three, the ALJ determined that the claimant does not have an impairment or combination of impairments that met or medically equaled the severity" of a listed impairment. Tr. 784.

The ALJ then determined that the Plaintiff had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b):

> Specifically, she is able to stand or walk for 6 hours in 8-hour workday as well as sit for 6 hours in an 8-hour workday with regular breaks. She is able

to push and pull within these limits.  She is able to frequently stoop and climb (ramps, stairs, ladders, ropes, and scaffolds) and occasionally reach overhead.  With her left dominant hand, she can seldom finger to do activities like assembly, but would be able to use fingers for keyboarding.  She would be able to handle with her left hand occasionally.  She could occasionally finger with her right non-dominant hand.  She must avoid concentrated exposure to extreme cold, extreme heat, and hazards.

Tr. 785.

At step four, the ALJ found that Plaintiff is capable of performing work that she has performed in the past (tool crib attendant) as actually performed.  Tr. 794.  Based on expert testimony from a Vocational Expert, the ALJ alternatively found that Plaintiff could perform the representative occupations of usher, sandwich board carrier, and courier.  Tr. 794, n.1.  The ALJ accordingly found Plaintiff was not under a disability at any time from December 7, 2009 (the alleged onset date) through December 31, 2014 (the date last insured) and denied Plaintiff's application for benefits.  Tr. 794-95.  Plaintiff now appeals to this Court.

## ISSUES

Plaintiff seeks judicial review of the ALJ's final decision denying her disability insurance benefits under Title II of the Social Security Act.  Plaintiff raises the following issues for review:

    1. Whether the ALJ conducted *de novo* review;

    2. Whether the ALJ erred in rejecting Plaintiff's subjective complaints;

    3. Whether the ALJ erred in finding Plaintiff did not meet or equal a listing at step 3;

4. Whether the ALJ erred in applying and weighing the medical opinions; and

5. Whether the ALJ erred in finding Plaintiff could perform work.

ECF No. 13 at 2. The Court evaluates each issue in turn.

## DISCUSSION

### A. *De Novo* Review

Plaintiff asserts that the ALJ failed to conduct a *de novo* hearing because the ALJ adopted and incorporated findings from the prior decision. ECF No. 13 at 4. Importantly, the district court instructed the ALJ to "hold a *de novo* hearing addressing step three, Plaintiff's credibility, and, if necessary, Plaintiff's residual functional capacity." Tr. 927. Further, the ALJ only incorporated "the prior decision to the extent not inconsistent with the direction of the District Court and the subsequent evidence of record." Tr. 778. Upon review of the opinion, it is clear the ALJ reviewed the evidence and reached its own conclusion anew, without any deference to the preceding opinion, as to step three, Plaintiff's credibility, and Plaintiff's RFC. *See* Tr. 784-93 (reviewing evidence and making determinations without reference to the preceding opinion; and the ALJ repeatedly wrote, "After reviewing and considering the evidence in the case, I . . ."). As such, despite Plaintiff's argument otherwise, the ALJ complied with the instructions on remand.

//

B. **Subjective Complaints**

In social security proceedings, a claimant must prove the existence of a physical or mental impairment with "medical evidence consisting of signs, symptoms, and laboratory findings." 20 C.F.R. §§ 404.1508, 404.1527. A claimant's statements about his or her symptoms alone will not suffice. 20 C.F.R. §§ 404.1508, 404.1527. Once an impairment has been proven to exist, an ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc). As long as the impairment "could reasonably be expected to produce [the] symptoms," the claimant may offer a subjective evaluation as to the severity of the impairment. *Id.* at 345. This rule recognizes that the severity of a claimant's symptoms "cannot be objectively verified or measured." *Id.* at 347 (quotation and citation omitted).

However, an ALJ may conclude that the claimant's subjective assessment is unreliable, so long as the ALJ makes "a credibility determination with findings sufficiently specific to permit [a reviewing] court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *see also Bunnell*, 947 F.2d at 345 ("[A]lthough an adjudicator may find the claimant's allegations of severity to be not credible, the adjudicator must specifically make findings which support this conclusion."). If there is no

evidence of malingering, the ALJ's reasons for discrediting the claimant's testimony must be "specific, clear and convincing." *Chaudhry v. Astrue*, 688 F.3d 661, 671-72 (9th Cir. 2012) (quotation and citation omitted). That is, the ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan*, 246 F.3d at 1208.

Plaintiff argues the ALJ erred in rejecting Plaintiff's subjective testimony. Plaintiff asserts, *inter alia*, the ALJ erred (1) in finding that her carpal tunnel symptoms had improved post-surgery and (2) by failing to discuss the relevant expert testimony of Dr. Schmitter. ECF No. 13 at 9-10. However, as demonstrated below, the ALJ's finding is supported by substantial evidence. Further, the ALJ identified other reasons to discredit Plaintiff's subjective testimony and these findings are supported by substantial evidence. These reasons provide a clear and convincing basis for finding Plaintiff's testimony not entirely credible.

As for Plaintiff's complaint regarding Dr. Schmitter, despite Plaintiff's representation that "Dr. Schmitter . . . agreed that there was no real evidence of improvement", ECF No. 13 at 10-11, the testimony of Dr. Schmitter shows (1) he was recounting an opinion from a doctor in 2009 that said Plaintiff's symptoms in her hand improved and (2) Dr. Schmitter simply stated that he did not know

whether there was any real evidence of improvement because the initial doctor wasn't specific. Tr. 839. Dr. Schmitter did not positively assert that there was no real evidence of improvement. Further, Dr. Schmitter's testimony that Plaintiff's carpal tunnel surgery had a poor outcome does not necessarily mean she did not see improvements.

As for the former argument, the ALJ specifically noted that, despite Plaintiff's testimony that "she had no improvement from the carpal tunnel surgeries" in February 2010, she "admitted to improvement in her right hand since the surgery, with no tenderness and only mild induration" with only "some numbness in her left hand" and "had a full range of motion in both wrists and all her digits." Tr. 786. The ALJ then noted that "[p]roviders released her for full work duties without restriction [], which suggest her carpal tunnel condition was not as limiting as the claimant has alleged." *Id*. Then, in April 2010, Plaintiff "denied having any hand pain but reported having some numbness in her hands" and "stated that she did not have any difficulty with her head, neck, shoulder, or mid-back, only 'variable discomfort' in the low back that was aggravated by repetitive bending or lifting." *Id*. Upon examination she had "adequate grip in the right hand despite some sensory loss in the fingers, and mild impairment in her left

hand with regard to motor and sensory changes." *Id.*[1]

Moreover, the ALJ recounted that Plaintiff was able to drive a truck in 2009 and worked in the tool area until she had the carpal tunnel release surgeries. Tr. 788. The ALJ then observed that, "while she did not seem to have dramatic improvement in her left hand, she had some improvement and, at the least, her condition remained mostly the same afterwards." *Id.* Thus, the ALJ found her past work activities are indicative of her capability after the surgeries. *Id.*

The ALJ also identified inconsistencies with Plaintiff's complaints regarding her back. The ALJ noted that, in September 2010, Plaintiff's "physicians opined that her cervical and lumbar degenerative disc disease was only mild in severity" and that "she had a good range of motion in her cervical spine, normal gait, good range of motion in her shoulders with no focal changes, full function in her right hand, and no focal changes in her elbows." Tr. 786-87. The ALJ observed that, "[i]n contrast to the evaluations only a few month[s] earlier, in November 2010, the claimant now was reporting constant pain in her neck, entire back, right

---

[1] Notably, Plaintiff does not argue her condition fluctuated. Rather, Plaintiff argues the "ALJ repeatedly refers to examinations irrelevant to this purported reason[.]" ECF No. 13 at 10. Whatever the reason for the examinations, the ALJ reasonably relied on statements made related to her condition at issue here.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12

buttock, and right leg as well as chronic numbness in her left hand." Tr. 787. The ALJ continued to discuss subsequent examinations where Plaintiff had "some limited range of back motion [with] normal gait, no spasms, and no muscle atrophy" along with a "gross hand grip" strength "between 50-65 pounds." *Id*. Finally, the ALJ noted that "[m]ultiple examiners determined that [Plaintiff] had mild or no impairment involving her neck, back, or hands." Tr. 789.

In light of this, the ALJ reached a reasonable conclusion in finding Plaintiff's subjective complaints were inconsistent with the medical evidence in the record. This is a clear and convincing reason for discounting Plaintiff's credibility.

C. **Step Three**

Plaintiff asserts that the ALJ erred in considering whether her impairments met or equaled a recognized listing. ECF No. 13 at 4-9. At its base, Plaintiff disagrees with the ALJ's finding that (1) "there was no objective medical evidence . . . of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in an inability to ambulate effectively" and that (2) her impairments "did not result in inability to perform fine and gross movements effectively[.]" ECF No. 13 at 5, 7. However, the record supports the ALJ's finding. Tr. 784-85. While Plaintiff points to the existence of nerve impingement, ECF No. 13 at 6, and some limitations in handling, reaching, and fingering, ECF No. 13 at 8, Plaintiff has not demonstrated that her impairments "interfere very seriously with [her]

ability to independently initiate, sustain or complete activities", as is required to show an "inability to ambulate effectively[,]" *see* ECF No. 13 at 7, let alone show it was unreasonable for the ALJ to find otherwise.[2]

Notably, Dr. Schmitter opined that Plaintiff did not meet or medically equal the severity of any listing and the ALJ agreed, noting that his "impartial testimony was well reasoned and persuasive" and "supported by the medical evidence[.]" Tr. 784. While Dr. Francis took the contrary position, *see* Tr. 772-73, the ALJ rejected his opinion because there was "no documentation that [Dr. Francis] treated or evaluated the claimant", he "provided no explanation for the opinion offered", and the "opinion is not consistent with the evaluations or treatment evidence" because "[t]here is no evidence of inability to perform gross or fine movements or extreme loss of function to support [his] conclusory statement." Tr. 784. Plaintiff has not pointed to evidence directly contradicting these findings. Indeed, Plaintiff was able to prepare meals, shop, do cleaning tasks (when not in pain), and drive a vehicle. Tr. 783.

//

---

[2] Plaintiff asserts that this finding did not necessarily negate the application of other paragraphs under the 1.04 listing, but Plaintiff makes no attempt to explain how they would apply. It is Plaintiff's burden to demonstrate harmful error.

D. **Medical Opinions**

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists. *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (quotation and citation omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ

may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

"Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). "In other words, an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13. That said, the ALJ is not required to recite any magic words to properly reject a medical opinion. *Magallanes*, 881 F.2d at 755 (stating that the Court may draw reasonable inferences when appropriate). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)).

1. Dr. Schmitter

First, Plaintiff argues the ALJ failed to explain why the RFC did not incorporate all of the limitations posed by Dr. Schmitter, despite the ALJ assigning

his opinion great weight (Plaintiff does not challenge the weight given to the opinion). Specifically, Plaintiff complains the ALJ "only restricted reaching to overhead and did not restrict the right hand from handling" even though Dr. Schmitter limited Plaintiff to reaching and handling occasionally. ECF No. 13 at 17-18. However, as Defendant points out, ECF No. 17 at 15, Dr. Schmitter clarified that the "right [hand] is doing fine". Tr. 840. Further, Dr. Schmitter only stated Plaintiff would have limitations reaching/handling *larger* objects, stating they would be diminished on an occasional basis. Tr. 828. Dr. Schmitter did not make an opinion about reaching overhead in particular, so there is no inconsistency. In any event, harmful error has not been shown.

2. Dr. Bauer

Plaintiff also takes issue with the ALJ assigning "little weight" to the opinion of Dr. Bauer. Because the opinion of Dr. Bauer is contradicted by other medical opinions, the ALJ need only provide a specific and legitimate reason for discounting the opinion. The ALJ met this burden. The ALJ reasonably found that Dr. Bauer's opinion that Plaintiff was "severely limited" was inconsistent with other medical evidence in the record and the claimant's documented activities. Tr. 792. While Plaintiff essentially complains that the ALJ did not explain the reasoning in detail at the point of making this assertion, the ALJ adequately laid out the underlying rationale why Plaintiff was not so limited throughout the

opinion, which clearly supports the ALJ's position. *Garrison*, 759 F.3d at 1012 ("An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" (quoting *Reddick v. Chater*, 157 F.3d at 725)).

### E. Plaintiff's ability to perform work

Plaintiff asserts that the ALJ erred in finding (1) Plaintiff could perform past work "as actually performed" and that (2) Plaintiff was capable of performing three other identified jobs. ECF No. 13 at 20-21. Plaintiff contends she could not perform her last job as a tool crib attendant because "she handled objects for 5 hours a day," citing to a form she filled-out at Tr. 236. But that is not what she testified to under oath before the ALJ. She testified that she did not do any lifting or carrying at that job. Tr. 849. Notably, the ALJ found that Plaintiff could perform this job, "as actually performed." Tr. 794.

Alternatively, the ALJ found that Plaintiff could perform work as an usher, for which there are about 23,000 jobs in the national economy, which represents a "significant number" of jobs. *See* ECF No. 13 at 21 (asserting 25,000 jobs is a close call under Ninth Circuit precedent). Plaintiff argues that, "[a]ccording to Job Browser Pro" the number of jobs available is significantly less than the number cited by the Vocational Expert. Counsel's subsequent offer of data derived from

Job Browser Pro does not undermine the vocational expert's testimony.  Counsel did not offer any expert opinion to the ALJ interpreting data from these or other sources to undercut the VE's analysis.  The VE cited three occupations with approximately 108,000 jobs in the national economy.  The ALJ thus properly found Plaintiff was not disabled.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 13) is **DENIED**.

2. Defendant's Motion for Summary Judgment (ECF No. 17) is **GRANTED**.

The District Court Executive is directed to file this Order, enter Judgment for Defendant, provide copies to counsel, and **CLOSE** this file.

**DATED** September 3, 2019.



THOMAS O. RICE
Chief United States District Judge